In re the Matter of the Termination of the Parent–Child Relationship of D.A., D.A. & D.A., minor children, and Herman Andrews, father, Appellant–Respondent,

v.

MONROE COUNTY DEPARTMENT OF CHILD SERVICES, Appellee–Petitioner.

No. 53A01–0612–JV–526.

Court of Appeals of Indiana.

July 11, 2007.

Karen A. Wyle, Bloomington, IN, Attorney for Appellant.

Derrick A. Mason, Bloomington, IN, Attorney for Appellee.

**OPINION**

VAIDIK, Judge.

### Case Summary

Herman Andrews ("Father") appeals the trial court's order terminating his parental rights to his children, Da.A., Des.A., and Deo.A. (collectively, "the Children"). Father argues that the trial court abused its discretion by granting Father's attorney's motion to withdraw because he did not have notice of his attorney's motion, the motion violated local court rules, and he was prejudiced by the grant of the motion. Additionally, Father argues that the grant of his attorney's motion violated his due process rights and his statutory right to counsel when the trial court conducted the termination hearing without Father or an attorney present. Concluding that the trial court abused its discretion by granting Father's attorney's motion to withdraw and that Father was denied due process because he did not have an opportunity to be heard, present evidence, or cross-examine witnesses, we reverse the trial court's order terminating Father's parental rights

and remand this case for a proper termination hearing.[1]

### Facts and Procedural History

Father and Lawanda Johnson ("Mother") are not married and have three children together: Da.A., born December 27, 2002; Des.A., born November 14, 2003; and Deo.A., born May 3, 2005. When Da.A. was born in December 2002, he tested positive for cocaine and was removed from Mother, placed in foster care, and subsequently determined to be a child in need of services ("CHINS"). After Mother and Father successfully completed drug treatment programs and Father completed an anger management class, Da.A. was reunified with Mother fourteen months after he had been removed from her.[2]

Around April 29, 2005, Mother, who was pregnant with Deo.A., ingested cocaine and then drove a car with two-year-old Da.A. and one-year-old Des.A. as passengers. Mother fell asleep while driving and had an accident. Mother and Da.A. and Des.A. were taken to the hospital and released. Mother had a drug screen while at the hospital and tested positive for cocaine. Four days later, on May 3, 2005, Mother gave birth to Deo.A., who tested positive for cocaine.

The Monroe County Department of Child Services ("MCDCS") intervened and on May 11, 2005, filed a petition alleging that the Children were CHINS. The petition alleged that Deo.A. was a CHINS because he was born with drugs in his system and that Da.A. and Des.A. were CHINS based on Mother's act of ingesting cocaine and driving her car with Da.A. and Des.A. in it. The MCDCS removed the Children from Mother's home and placed them in foster care.[3]

On May 16, 2005, Father appeared at the initial CHINS hearing, denied that the Children were CHINS, and requested counsel. The trial court granted Father's request for counsel, and set a pretrial conference for June 20, 2005. Thereafter, Mary Jo Hamilton ("Hamilton") entered her appearance for Father and filed a motion to continue the June 20th pretrial hearing, which the trial court granted and reset for June 27, 2005. When the trial court held the pretrial conference on June 27th, Father appeared but Hamilton did not. Father and Mother admitted that the Children were CHINS, and the trial court then determined that the Children were CHINS based on their admissions. The trial court then held the CHINS dispositional hearing on August 22, 2005. Father appeared at the hearing with Hamilton as counsel, and Hamilton was granted permission to withdraw as Father's counsel following the hearing. The trial court entered a dispositional order, in which it ordered Father to, among other things, attend parenting classes, participate in home based services and the development of a case plan, complete a substance abuse treatment program, and obtain and maintain adequate housing.

Father attended weekly one-hour supervised visits with the Children but did not initially participate in any services. When

---

1. Father also argues that the trial court erroneously ordered his parental rights terminated because the Monroe County Department of Child Services failed to establish the required statutory elements by clear and convincing evidence. Because we find the due process issue dispositive and remand for rehearing, we will not address this issue.

2. Des.A. was born during the fourteen-month time period when Da.A. was in foster care as a CHINS. Apparently, Des.A. remained in Mother's care and was never determined to be a CHINS.

3. The Children were placed with the same foster family that had cared for Da.A. during his prior CHINS placement.

Father visited with the Children he brought "appropriate" toys and clothes for them. Tr. p. 71. By the time the trial court held a review hearing in November 2005, Father continued his weekly visits and had requested home-based services. Katherine Hewett, who worked for Family Solutions and supervised Father's visits with the Children, set an appointment for Father with a family preservation provider, but Father "would not engage with her." *Id.* at 47. Father, however, continued his weekly visits with the Children, and in February 2006, began working with Virshawn Champion, who was an individual therapist with Family Solutions. Champion "process[ed] with [Father] the barriers that were preventing him from being successful and proceeding with the services." *Id.* at 35. After Father started working with Champion, he increased his weekly visits with the Children from one to three hours; started attending drug treatment with Meng Ai; found employment; and "work[ed] on trying to figure out his housing situation." *Id.* at 37. In April 2006, Meng Ai released Father from the drug treatment program because he tested positive for cocaine from a saliva test after he had told her that his test would come back "clean." *Id.* at 29. Father asserted to Ai that he had not used cocaine but that it had probably entered his system because he had been around people who were smoking cocaine.

On May 12, 2006, the MCDCS filed a petition to terminate Father's parental rights to the Children. On June 19, 2006, the trial court held an initial hearing, at which Father appeared and requested pauper counsel.[4] The trial court appointed Hamilton to again represent Father, and the MCDCS verified that it had Father's current address in Indianapolis. The trial court informed the parties that a pretrial conference would be held on July 17, 2006, and that the termination hearing would be held on September 28, 2006.

The following day, on June 20, 2006, Hamilton entered an appearance on behalf of Father. At some point, Father scheduled an appointment to meet with Hamilton on June 29, 2006.[5] On June 26, 2006, Hamilton sent Father a letter indicating that she was going to be "out of the office on Thursday" and asking him to "reschedule [his] appointment." Appellant's App. p. 75. After appearing on Father's behalf at the July 17, 2006, pretrial conference, Hamilton sent Father another letter on July 19, 2006, notifying him that his "next hearing [wa]s set for September 28, 2006," and requesting that he call to schedule an appointment with her prior to that hearing. *Id.* at 76.

On September 9, 2006, the trial court rescheduled the termination hearing for October 31, 2006. The record does not reflect that the trial court sent notice of the rescheduled termination hearing to Father.[6] On September 21, 2006, Hamilton filed a motion to withdraw her appear-

---

4. Mother also appeared at the initial hearing and requested counsel, and the trial court granted Mother's request for counsel as well.

5. We deduce that Father's appointment was set for June 29, 2006, because Hamilton sent Father a letter on June 26, 2006, which fell on a Monday, canceling Father's appointment for "Thursday." Appellant's App. p. 75.

6. The chronological case summary ("CCS") indicates the following:

> 09/07/2006 Notice: A RJO: N
> Court on its own motion vacates the fact finding hearing scheduled on September 28, 2006 at 9:00 AM and resets this matter for FACT FINDING hearing on October 31, 2006 at 9:00 AM.
> ber [initials]

*Id.* at 4.

ance.[7] In her motion, Hamilton stated that she wanted to withdraw as Father's counsel because:

\* \* \* \* \*

2. Counsel was appointed by the Court for [Father], but [Father] has never kept an appointment to see counsel in order to prepare for the fact-finding hearing.

3. In addition, [Father] did not appear at the pretrial conference on July 17, 2006, so counsel has never met [Father].

4. Counsel has attempted to contact [Father] in writing at two different occasions, one listed by the Court in this cause, and both attempts have been unanswered.

*Id.* at 74. Hamilton provided a copy of her June 26, 2006, letter and her July 19, 2006, letter to Father as attachments to her motion to withdraw. Hamilton did not send a copy of her motion to withdraw to Father.[8] The trial court set a hearing on Hamilton's motion to withdraw for October 31, 2006.[9] The record does not reflect that the trial court sent notice of the motion to withdraw hearing to Father.[10]

On October 27, 2006, the MCDCS filed a "Petition for Authorization of the Release of Substance Abuse Treatment Records of Meng Ai Regarding the Respondents, [Mother] and [Father.]" ("Petition for Drug Records") *Id.* at 4. On October 30, 2006, the trial court set a hearing on the

MCDCS's petition for the afternoon of that same day, and the record reflects that no notice was sent. During the hearing, the trial court remarked that "the Respondents have failed to appear, although their counsels of record are present." Tr. p. 8. The trial court indicated that it was there to hear the MCDCS's Petition for Drug Records but noted that it had also received motions to withdraw from counsel for both Father and Mother. The trial court then stated:

The record should reflect that there's been a brief discussion in the presence of all parties present regarding these preliminary matters. And the Court having previously set the petitions to withdraw for hearing, tomorrow morning the date of the fact finding and the fact that the respective parties are present as described in this record, let's deal with that motion first.

*Id.* at 9. After indicating that she had not had any contact with Father since the case began, Hamilton stated, "I think I feel, Your Honor, that I am unable to adequately represent them [sic]. I would pretty much be a per say [sic] inadequate counsel because I've had absolutely no contact with Mr. Andrews [Father]." *Id.* The trial court granted Hamilton's motion to withdraw and then heard argument regarding the MCDCS's Petition for Drug Records.

The following day, the trial court held the termination hearing. After the trial court noted that Father and Mother were

---

7. Mother's attorney, Phyllis Emerick, filed a motion to withdraw her appearance the previous day, September 20, 2006.

8. Hamilton's certificate of service indicates that she sent a copy of her motion to the "DCS; CASA; and Phyllis Emerick, attorney for [Mother.]" *Id.* at 74.

9. The trial court also set October 31, 2006, as the date to hear Mother's attorney's motion to withdraw.

10. The CCS indicates the following:

09/28/2006 Notice: A RJO: N
Court sets this cause for hearing regarding the Motion(s) to Withdraw by Mary Joan Hamilton and Phyllis Emerick [Mother's counsel] on October 31, 2006 at 9:00 AM. ber [initials]
*Id.* at 4.

not present, it asked the MCDCS whether "we ha[d] proof of service?" *Id.* at 13. The MCDCS responded, "Service, they [Father and Mother] did appear to the initial hearing and you know, from testimony previously taken in this case they have not been able to correspond with their attorneys." *Id.* The trial court then found "that they had proper notice" and proceeded with the termination hearing. *Id.*

During the hearing, the MCDCS presented testimony from various service providers, employees of the MCDCS, the court appointed special advocate ("CASA"), and the Children's foster mother. Katherine Hewett, who worked for Family Solutions and supervised Father's visits with the Children, testified Father "loves the children and that's obvious, and they love him[.]" *Id.* at 53. Father's therapist from Family Solutions, Virshawn Champion, testified that Father "has some very strong parenting skills and his interactions with the kids are superb. He's probably the best parent that I've seen in the seven years that I've had this job, and has a really good relationship with the kids. . . ." *Id.* at 39. Champion did, however, express some concerns about Father's lack of follow through with services and with whether his environment was healthy for the Children. The CASA testified that Father's visits with the Children went well and that he was very good with them; nevertheless, she recommended that his parental rights be terminated. The CASA and the MCDCS case manager, Dawn Freeman, acknowledged that Father brought nice gifts for the Children when he visited them, but they questioned how he was able to buy such gifts. Freeman also testified that she sent notice of the termination hearing to Father, but she did not specify when she sent it to him.

At the end of the termination hearing, the trial court ordered that Father's parental rights to the Children be terminated and thereafter issued an order, which provides, in relevant part:

\* \* \* \* \*

2. Notice has been provided to all persons required by statute in the most effective means under the circumstances . . . Notice of hearings was given in open Court during the initial [termination] hearing on June 19, 2006.

3. A fact finding hearing was held on October 31, 2006, at which witnesses were sworn and evidence heard.

4. . . . Herman Andrews, father of [the Children], did not appear. . . .

\* \* \* \* \*

6. It was established by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for the placement outside the parent's home will not be remedied in that the father, Herman Andrews, failed to appear on October 31, 2006 to present any evidence to the contrary[.]

7. It was established by clear and convincing evidence that continuation of the parent-child relationship poses a threat to the well-being of the children in that neither parent is able and willing to care for the child[ren].

8. It was established by clear and convincing evidence that termination is in the best interest of the children. CASA, Harriet Curts, testified that the children are doing very well in the current foster home and that adoption is in the best interest of the children.

9. It was established by clear and convincing evidence that the [MCDCS]

has a satisfactory plan for the care and treatment of the children, which is: adoption.

Appellant's App. p. 7–8. Father now appeals the involuntary termination of his parental rights to the Children.[11]

## Discussion and Decision

Father argues that the trial court erroneously terminated his parental rights to the Children. Specifically, Father contends that the trial court abused its discretion by granting his attorney's, Hamilton's, motion to withdraw because he did not have notice of Hamilton's motion or the hearing on the motion, the motion violated local court rules, and it resulted in prejudice to him because he was left unrepresented at the termination hearing. In a related argument, Father argues that the trial court violated his due process rights by terminating his parental rights after conducting a termination hearing in which Father was unable to present evidence and cross-examine witnesses because he was neither present nor represented by counsel. We will review each argument in turn.

### I. Motion to Withdraw

 Father argues that the trial court abused its discretion by granting Hamilton's motion to withdraw as his attorney. The decision regarding whether an attorney's motion to withdraw should be granted is left to the trial court's discretion. *Smith v. Smith*, 779 N.E.2d 6, 8 (Ind.Ct.App.2002). An abuse of discretion exists only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Prior to the time that Hamilton filed her motion to withdraw, the trial court rescheduled the termination hearing for Oc-

tober 31, 2006, but did not send notice of the rescheduled hearing to Father. When Hamilton filed a motion to withdraw her appearance, she provided a copy of two letters she had sent to Father as attachments to her motion: (1) her June 26, 2006, letter—in which she cancelled an appointment that Father had scheduled with her; and (2) her July 19, 2006, letter—in which she requested Father to schedule an appointment. Hamilton's motion indicates that she wanted to withdraw as Father's counsel because Father had "never kept an appointment to see counsel[.]" Appellant's App. p. 74. Hamilton's motion does not indicate that she informed Father of the rescheduled October 31 st termination date or informed him of her intent to withdraw as his attorney. Furthermore, Hamilton did not send a copy of her motion to withdraw to Father. The trial court set a hearing on Hamilton's motion to withdraw for October 31, 2006, but did not send notice of the motion to withdraw hearing to Father.

On October 30, 2006, the trial court entered an order granting a hearing on the MCDCS's Petition for Drug Records for the afternoon of that same day, and the record reflects that no notice was sent to Father. During the hearing, the trial court remarked that "the Respondents have failed to appear, although their counsels of record are present." Tr. p. 8. The trial court indicated that it was there to hear the MCDCS's Petition for Drug Records but noted that it had also received motions to withdraw from counsel for both Father and Mother. The trial court then stated:

> The record should reflect that there's been a brief discussion in the presence of all parties present regarding these preliminary matters. And the Court having previously set the petitions to

11. Mother's parental rights were also termi- nated, but she is not part of this appeal.

withdraw for hearing, tomorrow morning the date of the fact finding and the fact that the respective parties are present as described in this record, let's deal with that motion first.

*Id.* at 9. The trial court granted Hamilton's motion to withdraw and then heard argument regarding the MCDCS's Petition for Drug Records. The following day— October 31, 2006—the trial court held the termination hearing, in which Father was neither present nor represented by counsel.

Father argues that the trial court abused its discretion by granting Hamilton's motion to withdraw because the motion violated local court rules—specifically, Monroe Circuit Court Civil Rule No. 2— and because he had no notice of the motion, no notice of the October 31 st date set for the hearing on the motion, and no notice of the October 30th hearing during which the trial court actually heard and granted the motion. Furthermore, he asserts that the grant of Hamilton's motion prejudiced him because he was left unrepresented the day before the termination hearing without knowledge that he no longer had counsel and because the trial court held the termination hearing in which he was not present, not represented by counsel, and did not have an opportunity to present evidence or cross-examine witnesses.

On the other hand, the MCDCS argues that Hamilton's motion did not violate local court rules, and even if it did, that the trial court did not abuse its discretion by granting her motion to withdraw because Hamilton had no way of knowing what Father wanted to do regarding the termination hearing. The MCDCS does not address Father's contentions regarding the lack of notice of the motion and hearings and, instead, argues that any prejudice to Father was the direct result of his own actions of failing to contact Hamilton or the trial court.

We disagree with the MCDCS, agree with Father, and find *Smith,* 779 N.E.2d 6, to be instructive in the resolution of this issue. In *Smith,* an attorney entered an appearance for a father in a child custody modification matter. The attorney later filed a motion to withdraw her appearance, in which she informed the trial court that: (1) the case was set for final hearing and the date upon which it was set; (2) her client was aware of the final hearing date; (3) there had been a breakdown in the attorney-client relationship; (4) she had advised her client of her intention to withdraw by letter; and (5) her client would not be prejudiced by her withdrawal. *Smith,* 779 N.E.2d at 7. Attached to the attorney's motion was a letter the attorney had sent to her client, the father, and the letter informed the father that the attorney would be moving to withdraw as his attorney. The trial court initially set the attorney's motion for a hearing but ultimately denied the motion to withdraw without a hearing. *Id.*

The trial court certified its order denying the attorney's motion to withdraw for interlocutory appeal, and on appeal, we held that the trial court had abused its discretion by denying the attorney's motion to withdraw. *Id.* at 8–9. In doing so, we noted the importance of the attorney providing notice to the client of her "intent to withdraw in writing before she filed her motion." *Id.* at 9. Additionally, we highlighted the facts that the attorney had made sure that the client was aware of the final hearing date, that the attorney had filed her motion in a timely manner so that the client would have time to secure new counsel if he chose to do so, and that the father would not have been prejudiced by the granting of the attorney's motion. *Id.* Thus, we held that the trial court abused

its discretion by denying the attorney's motion to withdraw. *Id.*

■■ In the instant case, however, we are faced with a very different situation than in *Smith.* Here, Hamilton did not inform Father of her intent to withdraw prior to filing her motion to withdraw, and indeed, did not even send him a copy of the motion once she did file it. Furthermore, unlike the attorney in *Smith,* Hamilton did not make sure that Father was aware of the final hearing date. To be sure, Hamilton's failure to notify Father of her intention to withdraw and failure to apprise him of the pending termination date prior to filing her petition was in violation of Monroe Circuit Court Civil Rule No. 2, which provides, in relevant part:

> Petitions to withdraw may be filed no earlier than five days after the attorney has certified written notice to the client of the intention to withdraw, unless there is a simultaneous or prior entry of appearance by the new attorney. The written notice shall state any pending deadlines or hearing dates and a copy of said notice shall be attached to the petition to withdraw.

*See* Appellant's Br. p. 20; *see also* Monroe Circuit Court Civil Rules *available* at http://www.co.monroe.in.us/circuitcourt/ forms/civilrules.pdf (last visited on June 11, 2007). We note that once a trial court promulgates a rule, the court and all litigants are generally bound by the rule. *Meredith v. State,* 679 N.E.2d 1309, 1311 (Ind.1997). Nevertheless, a trial court may set aside its own rule—although it should not be set aside lightly—if the court assures itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule. *Buckalew v. Buckalew,* 754 N.E.2d 896, 897 (Ind.

2001) (citing *Meredith,* 679 N.E.2d at 1311).

Here, however, Father's rights were prejudiced by Hamilton's failure to follow the local rule because she neither informed him of the final hearing date nor of her intent to withdraw. Additionally, unlike the client in *Smith,* Father—who had no notice of the motion to withdraw, the scheduled October 31 st hearing on the motion to withdraw, or the October 30th hearing during which the trial court actually heard the motion to withdraw—did not have time to secure new counsel. Indeed, Father was deprived of counsel without notice, and such deprivation of counsel violated Father's statutory right to counsel. *See* Ind.Code § 31–32–2–5 ("A parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship."). Moreover, Father was prejudiced by the granting of Hamilton's motion to withdraw because, as discussed in further detail below, the trial court conducted a termination hearing in which Father was unable to present evidence and cross-examine witnesses because he was neither present nor represented by counsel. We recognize that Father did not meet with his attorney and did not appear at the termination pretrial conference. We cannot condone this behavior. Nevertheless, it is clear from the record before us that Father was not notified of the intent of his attorney to withdraw, the date of the hearing on that motion, or the fact the motion was granted. Therefore, under the facts of this case, we conclude that the trial court abused its discretion by granting Hamilton's motion to withdraw her appearance. *Cf. Smith,* 779 N.E.2d at 8–9.

## II. Due Process

Derivative of Father's challenge to the trial court's grant of Hamilton's motion to withdraw, Father contends that the trial court violated his due process rights by

conducting a final termination hearing where he was unable to present evidence and cross-examine witnesses because he was neither present nor represented by counsel.

Indiana Code § 31–35–2–6.5(e), which governs hearings for petitions to terminate a parent-child relationship, provides that "[t]he court shall provide to a [parent] an opportunity to be heard and make recommendations to the court at the hearing. The right to be heard and to make recommendations under this subsection includes the right of a [parent] to submit a written statement to the court...." Furthermore, Indiana Code § 31–32–2–3(b) provides that in proceedings to terminate the parent-child relationship, "[a] parent, guardian, or custodian is entitled: (1) to cross-examine witnesses; (2) to obtain witnesses or tangible evidence by compulsory process; and. (3) to introduce evidence on behalf of the parent, guardian, or custodian."

■ In addition to these statutory provisions, the Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *Thompson v. Clark County Div. of Family and Children,* 791 N.E.2d 792, 794–95 (Ind.Ct.App.2003), *trans. denied.* When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *Lawson v. Marion County Office of Family and Children,* 835 N.E.2d 577, 579 (Ind.Ct.App.2005). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Thompson,* 791 N.E.2d at 795 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

■ The nature of process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Lawson,* 835 N.E.2d at 580. The balancing of these factors recognizes that although due process is not dependent on the underlying facts of the particular case, it is nevertheless "flexible and calls for such procedural protections as the particular situation demands." *Thompson,* 791 N.E.2d at 795 (quoting *Mathews,* 424 U.S. at 334, 96 S.Ct. 893).

■ In this case, both the private interests and the countervailing governmental interests that are affected by the proceeding are substantial. In particular, the action concerns a parent's interest in the care, custody, and control of his children, which has been recognized as one of the most valued relationships in our culture. *Lawson,* 835 N.E.2d at 580. Moreover, it is well settled that the right to raise one's children is an essential, basic right that is more precious than property rights. *Id.* As such, a parent's interest in the accuracy and justice of the decision is commanding. *Id.* Furthermore, a parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship. *See* I.C. § 31–32–2–5. On the other hand, the State's *parens patriae* interest in protecting the welfare of the children involved is also significant. *Lawson,* 835 N.E.2d at 580. Delays in the adjudication of a case impose significant costs upon the functions of the government as well as an intangible cost to the lives of the children involved. *Id.*

■ When balancing the competing interests of a parent and the State, we must also consider the risk of error created by the challenged procedure. The risk of error created by granting an attorney's

motion to withdraw representation of a parent who has no knowledge of the attorney's withdraw motion or the grant of the motion and then terminating the parent's parental rights the following day after conducting a hearing where evidence against the parent is presented with neither him nor his attorney present is substantial because the parent is deprived of his statutory right to counsel and, more importantly, does not have an opportunity to present witnesses in his or her favor or to cross-examine opposing witnesses. *See Lawson*, 835 N.E.2d at 580; *Thompson*, 791 N.E.2d at 795. Consequently, the trial court may not have an accurate picture of the evidence before making its decision. Not only does Indiana Code § 31–32–2–3(b) provide that a parent in a proceeding to terminate the parent-child relationship "is entitled … to cross-examine witnesses … [and] to introduce evidence on [his or her] behalf," but cross-examination is "fundamental and essential to a fair trial." *Parker v. State*, 773 N.E.2d 867, 869 (Ind.Ct.App.2002), *trans. denied.*

We have previously recognized the importance in termination of parental rights cases of conducting a hearing that meets due process requirements. In *Lawson*, we concluded that the risk of error in conducting a hearing where evidence against the father was presented after his attorney

had been excused from the proceeding was substantial. *Lawson*, 835 N.E.2d at 581. We reasoned that because the father's "due process rights were significantly compromised" because he was unable to cross-examine some of the witnesses and unable to object to key exhibits admitted into evidence. *Id.*

Here, the trial court granted Hamilton's motion to withdraw as Father's attorney, but Father had no notice of the motion, the hearing during which the trial court granted the motion, or the grant of the motion. The following day, the trial court held a termination hearing at which Father did not appear. When the trial court inquired into whether there was proof of service that Father had notice of the hearing, the attorney for the MCDCS indicated that Father knew of the termination hearing because he appeared at the initial hearing. *See* Tr. p. 13. The trial court then found "that [he] had proper notice" and proceeded with the termination hearing, during which the MCDCS presented testimony from various service providers, employees of the MCDCS, the CASA, and the Children's foster mother while Father was neither present nor represented by counsel.[12]

After balancing the substantial interest of Father with that of the State and in light of the substantial risk of error creat-

---

12. The trial court's order terminating Father's rights also provides that Father was provided notice because "[n]otice of hearings was given in open Court during the initial hearing on June 19, 2006." Appellant's App. p. 7. We note, however, that during the initial hearing, the trial court initially scheduled the termination hearing for September 28, 2006. The trial court later rescheduled the termination hearing for October 31, 2006, but the trial court did not send notice of the rescheduled hearing to Father. The case manager of the MCDCS, who was the last witness of the termination hearing, testified that she sent notice of the termination hearing to Father, but she did not specify when she sent it to

him or specifically testify that she sent it to him at least ten days prior to the hearing as required by Indiana Code § 31–35–2–6.5 (providing that at least ten days before a hearing on a petition to terminate the parent-child relationship, the entity that filed the petition must send notice of the hearing to the child's parent). Even if the MCDCS did indeed send notice of the October 31st termination hearing to Father, the record before us indicates that Father was not aware that his counsel had withdrawn and would have been operating under the assumption that he still had counsel that would represent him at the termination hearing.

ed by the challenged procedure, we conclude that the trial court's entry of judgment terminating Father's parental rights in this manner denied Father due process of law and violated Indiana Code § 31–32–2–3(b), which provides Father the opportunity to present evidence and cross-examine witnesses. Father was not given the opportunity to be heard at a meaningful time or in a meaningful manner. Again, we do not condone Father's failure to appear at the pretrial conference and to meet with Hamilton. Nevertheless, Father was not notified of Hamilton's intent to withdraw or the fact the motion to withdraw was granted, and such lack of notification resulted in Father being unrepresented at the final termination hearing. Further, it is entirely unclear whether Father had timely notice or any notice of the final termination hearing. Given these circumstances and the fact that Father did participate in weekly visitations with the Children and made some effort in participating in services, the substantial risk of error in granting the termination petition is great, and "the error in this case is too great to ignore." *See Lawson*, 835 N.E.2d at 581. We, therefore, reverse the entry of judgment terminating Father's parental rights and remand this case to the trial court with instructions to hold a proper final termination hearing.

Reversed and remanded.

SULLIVAN, J., and ROBB, J., concur.