## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 06 2018, 6:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Eric M. Oliver
Oliver & Cline LLP
Danville, Indiana

ATTORNEY FOR APPELLEE

Olivia A. Napariu
Napariu Law, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven A. Redinbo, <br> *Appellant-Respondent,* <br><br> v. <br><br> Kristin L. Redinbo, <br> *Appellee-Petitioner.* | September 6, 2018 <br><br> Court of Appeals Case No. 18A-DC-904 <br><br> Appeal from the Morgan Superior Court <br><br> The Honorable Brian Williams, Judge <br><br> Trial Court Cause No. 55D02-1704-DC-770 |

**Robb, Judge.**

# Case Summary and Issue

[1] Steven Redinbo ("Father") appeals the trial court's entry of a final decree of dissolution. On appeal, Father argues the trial court abused its discretion in denying his motion to correct error after the trial court denied his motion for continuance and allowed his counsel to withdraw his appearance at the commencement of the final hearing. Concluding the trial court abused its discretion in denying Father's motion to correct error as related to the trial court's decision to allow his counsel to withdraw his appearance before the final hearing, we affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2] Father and Kristin Redinbo ("Mother") were married on October 10, 2009. Two children were born of the marriage. Seven years later, on April 25, 2017, Mother filed this action for dissolution of marriage. During the pendency of this action, the parties exercised joint parenting time, alternating weekly.

[3] Father was served with the petition for dissolution on April 26. Soon thereafter, Father retained attorney Daniel Vandivier to represent him and Vandivier sent Father several text messages confirming the receipt of his retainer. Vandivier entered his appearance on May 19. Five months later, on October 20, Mother moved for a final hearing and the trial court set a final hearing for January 26, 2018.

[4]     On January 24, two days before the final hearing, Vandivier filed a motion for continuance over Mother's objection, claiming the "[p]arties need additional time to complete discovery." Appellant's Appendix, Volume II at 19. The trial court denied the motion. At the final hearing, Mother, Mother's counsel, and Vandivier appeared. Father did not appear. Once the court went on record, Vandivier made an oral motion to withdraw his appearance:

| | |
|---|---|
| [Vandivier]: | Your Honor, if I may, I'm going to take leave to withdraw my appearance. I have tried . . . I think I talked to opposing counsel, if my memory serves me correctly, I think it was that week between Christmas and New Years that I really don't work, but had to be in the office, and she caught me there, and we talked a little bit about this case. |
| [The Court]: | Uh-Huh. |
| [Vandivier]: | I tried to contact Mr. Redinbo on 1-3, my staff has tried to contact him, left a message on 1-16, 1-23, 1-24 twice, 1-25. And I've left messages at his phone number. And I just don't know where he is. |
| [The Court]: | Okay. |
| [Vandivier]: | At this point he has not responded to me. |
| [The Court]: | Are you having contact with him, ma'am? |
| [Mother]: | Yeah, he had the kids overnight last night. |

| | |
|---|---|
| [The Court]: | Is he aware of this hearing? |
| [Mother]: | I didn't . . . I haven't spoken to him. |
| [The Court]: | Just haven't discussed that at all?  Okay.  All right. |
| [Vandivier]: | Do you want me to follow that up in writing, Judge, or . . . ? |
| [The Court]: | No.  You're here, Motion on the record, granted, you're free to go. |

\* \* \*

| | |
|---|---|
| [The Court]: | Okay.  Well, how do you want to proceed today, counsel? |
| [Mother's Counsel]: | Well, given that [Father] was represented, he had counsel, he has notice of hearing, I would prefer to proceed, Your Honor. |
| [The Court]: | All right.  You have the floor. |

Transcript, Volume 2 at 3-4.

[5]   The trial court proceeded to conduct the final hearing in Father's absence and Mother testified to the various assets and debts of the parties as well as Father's new job and his current income.  Following the hearing, the trial court completed a child support worksheet and issued its decree of dissolution on January 30.  Mother was granted sole legal and physical custody of the

children, with Father to receive parenting time according to the Indiana Parenting Time Guidelines, and Father was ordered to pay child support in the amount of $300.00 per week.

[6] On February 9, Father retained new counsel after learning of the hearing from Mother and filed a motion to correct error or, in the alternative, to vacate default judgment. On February 12, Vandivier filed, and Father received, Vandivier's written motion to withdraw. The trial court conducted a hearing on Father's motion to correct error on March 9, at which both Mother and Father were present and represented by counsel. Father testified to the following:

> [Counsel]: Did you ever receive any written communications by text or email or in the mail about a dissolution hearing that was coming up on January, at the end of January, 2018?
>
> [Father]: I did not.
>
> [Counsel]: Did you ever ask Mr. Vandivier prior to the final hearing to withdraw his appearance for you?
>
> [Father]: I did not.
>
> [Counsel]: Did you ever receive anything from him telling him [sic] that he intended to withdraw his appearance?
>
> [Father]: No sir, I did not.

[Counsel]:   Tell me why you hired counsel.

[Father]:    I retained Mr. Vandivier for the purpose of this dissolution to protect my rights as a father and to take care of the legal issues at hand because I was unaware of how to do so.

[Counsel]:   Okay. And at any point in time after approximately mid-May of 2017, were you without counsel in this case to the best of your knowledge?

[Father]:    No, to the best of my knowledge I had counsel continuously.

[Counsel]:   And then how did you find out about this Decree of Dissolution?

[Father]:    I believe it was the Monday after the hearing I was contacted by [Mother] and she asked me if I was aware of the hearing, and I was not.

[Counsel]:   And then did you get a copy of the Decree of Dissolution?

[Father]:    From the Court, no. The first copy I received was from opposing counsel.

[Counsel]:   Well we've reviewed that now?

[Father]:    We have, yes.

[Counsel]:   Okay. And if you had known about the hearing, would you have attended the hearing?

[Father]:      Yes, sir, absolutely.

* * *

[Counsel]:     Did Mr. Vandivier have [Father's address, phone number, and email address]?

[Father]:      He did, yes.

[Counsel]:     And that's actually the address that you were served the dissolution of marriage?

[Father]:      Yes.

[Counsel]:     And did you change your address, phone number, or email, after you retained Mr. Vandivier?

[Father]:      No.  Those had remained the same and all the forms of communication have been in continuous working order since then.

[Counsel]:     Now, in January of 2018, did you have some phone calls from a number that you did not recognize?

[Father]:      I had, after I found out what was going on, I went back and looked and I had three phone calls from a number that I did not have in my contacts, yes.

[Counsel]:     And did you have any voice mails associated with those numbers?

[Father]:      No sir.

Tr., Vol. 2 at 37-39.

[7]     On March 14th, the trial court entered an order denying Father's motion providing:

1.  Father complains of the result in the matter, asserting lack of notice and surprise that his attorney withdrew immediately prior to the final hearing in this case.

2.  Father correctly asserts that his former attorney did not comply with the Indiana Trial Rules and Morgan County's local rule regarding withdrawal.

3.  Father's prior attorney withdrew for lack of communication and inability to get a response from the Father regarding preparation for this case. The attorney described multiple attempts at written and telephonic communication regarding the case. While not sworn testimony, these assertions to the court by an officer of the court are, for purposes of this motion, accepted as truth.

4.  Father admits and states under oath that he has determined after the fact that he received multiple calls from his prior attorney and that Father failed or refused to answer or return calls as he did not recognize the number on caller ID.

5.  Father's actions placed his prior counsel between the Scylla and Charybdis of staying in the case as long as possible to be available to assist the client and protect his client's interests versus the ethical morass of purporting to represent his interests without preparation, consultation and instruction from the client.

6. Father's prior attorney made reasonable efforts to communicate with the Father and any prejudice the Father incurred as a result of his failure to withdraw in a timely manner and with written notice to the Father is resoundingly outweighed by Father's own failure to communicate, return phone calls, and follow up on his case for months.

7. Upon the court's observation of the parties, the assertions and evidence at both hearings and Father's testimony and demeanor, the court concludes the Father was intentionally choosing to ignore and delay the dissolution, rather than actively deal with an obviously negative situation. This has predictably created a dissatisfactory result for him.

8. The court finds the equities in this situation do not call for setting aside the decree or the property orders issued in this case.

9. The equities and best interests of the children do call for a proper full hearing on the issues of parenting time and child support, despite Father's unreasonable actions to date.

10. Mother has been placed in the position of incurring additional fees as a result of Father's unreasonable actions. Upon Motion and pursuant to the court's equitable and statutory authority pursuant to Ind. Code §31-15-10-1, the court finds Father should promptly pay the Mother $2,000.00 in periodic attorney's fees. The equities of the situation dictate that this should be paid prior to Mother being required to engage in further litigation.

    Father's motion for relief from judgment under TR60(B) is denied. The Father has not met his burden under said trial rule. The court finds any error is fully attributable to the actions of the Father and do not support the requested relief.

Any error in these proceedings was invited by the Father's actions. The doctrine of invited error precludes a party from taking advantage of an error that he commits, invites, or which is the *natural consequence of his own neglect* or misconduct.

Appellant's App., Vol. II at 7-9. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[8] We review a trial court's denial of a motion to correct error for an abuse of discretion. *In re Marriage of Dean*, 787 N.E.2d 445, 447 (Ind. Ct. App. 2003), *trans denied*. An abuse of discretion occurs where the trial court's decision is against the logic and effect of the facts and circumstances before it. *Homehealth, Inc. v. Heritage Mut. Ins. Co.*, 662 N.E.2d 195, 198 (Ind. Ct. App. 1996), *trans. denied*.

## II. Motion to Correct Error

### A. Motion to Continue

[9] Father argues the trial court abused its discretion in denying his motion to correct error related to the denial of his motion for continuance. Specifically, Father argues the trial court should have granted his motion to continue "because the parties need[ed] additional time to complete discovery." Brief of Appellant at 8. We disagree.

[10]     When a motion to continue has been denied, we will find an abuse of discretion if the moving party has demonstrated good cause for granting the motion but we will reverse the trial court's decision only if the moving party can show that he was prejudiced by the denial. *In re J.E.*, 45 N.E.3d 1243, 1246 (Ind. Ct. App. 2015), *trans. denied*. We review such denials "with a strong presumption that the trial court properly exercised its discretion." *In re B.H.*, 44 N.E.3d 745, 748 (Ind. Ct. App. 2015), *trans. denied*. Here, not only has Father failed to demonstrate good cause for granting the motion, but he has also failed to demonstrate how he was prejudiced by the denial.

[11]     At the time of Father's motion to continue—just two days prior to the hearing—the dissolution action had been pending for almost nine months. The motion relied exclusively upon the assertion that a continuance was necessary to complete discovery, without explaining *why* discovery had not been completed, or *what* further discovery was necessary. On appeal, Father again relies solely on perfunctory statements that the "parties need[ed] additional time to complete discovery," that discovery was "incomplete," and that the motion was made in "good faith" and not "for the purposes of delay." Br. of Appellant at 8-9. Considering the circumstances surrounding the motion, its lack of specificity, and Father's failure to make a cogent argument regarding good cause or prejudice on appeal, we conclude the trial court acted soundly within its discretion in denying the motion.

# B. Withdrawal of Appearance

[12] Next, Father argues the trial court abused its discretion in denying his motion to correct error as related to the trial court's decision to allow his counsel to withdraw his appearance before the final hearing. Father argues not only did the trial court's decision to allow his counsel to withdraw his appearance violate Indiana Trial Rule 3.1 and Morgan County Local Rule 1.3, but the trial court also erred when it did not continue the final hearing after permitting his counsel's withdrawal. The decision as to whether an attorney's motion to withdraw should be granted is left to the trial court's discretion. *In re D.A.*, 869 N.E.2d 501, 507 (Ind. Ct. App. 2007).

[13] Indiana Trial Rule 3.1(H) provides:

> Withdrawal of Representation. An attorney representing a party may file a motion to withdraw representation of the party upon a showing that the attorney has sent written notice of intent to withdraw to the party at least ten (10) days before filing a motion to withdraw representation, and either:
>
> (1) the terms and conditions of the attorney's agreement with the party regarding the scope of the representation have been satisfied, or
>
> (2) withdrawal is required by Professional Conduct Rule 1.16(a), or is otherwise permitted by Professional Conduct Rule 1.16(b).
>
> An attorney filing a motion to withdraw from representation shall certify the last known address and telephone number of the party, subject to the confidentiality provisions of Sections (A)(8)

and (D) above, and shall attach to the motion a copy of the notice of intent to withdraw that was sent to the party.

A motion for withdrawal of representation shall be granted by the court unless the court specifically finds that withdrawal is not reasonable or consistent with the efficient administration of justice.

Morgan County Local Rule 1.3 provides:

All withdrawals of appearance shall be in writing and by leave of Court. Permission to withdraw shall be given only after the withdrawing attorney has given his/her client ten (10) days advance written notice of his/her intention to withdraw and has filed a copy of such notice with the Court; or upon a simultaneous or prior entering of appearance by counsel for said client. No request for withdrawal of appearance shall be granted unless the same has been filed with the Court at least twenty (20) days prior to trial date, except for good cause shown.

Morgan Circuit and Superior Court Civil Rule of Procedure LR55-TR3.1-1.3, https://www.in.gov/judiciary/files/morgan-local-rules.pdf at 2 ("the local rule").

[14] Thus, to withdraw an appearance in accordance with Trial Rule 3.1 and the local rule, an attorney must give both the client and the court timely, written notice of that intent, and the attorney must provide the court with the client's last known address and telephone number as well as a copy of the notice of intent to withdraw that was sent to the client.

[15]     On appeal, it is uncontested that Vandivier's motion did not comply with the relevant trial rules. *See* Br. of Appellee at 9-10 ("[Mother] acknowledges . . . that the motion to withdraw did not comply with such rules."). Indeed, the trial court found:

> Father correctly asserts that his former attorney did not comply with the Indiana Trial Rules and Morgan County's local rule regarding withdrawal.

Appellant's App., Vol. II at 7. We have previously explained,

> once a trial court promulgates a rule, the court and all litigants are generally bound by the rule. Nevertheless, a trial court may set aside its own rule—although it should not be set aside lightly—if the court assures itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule.

*In re D.A.,* 869 N.E.2d at 509 (citations omitted).

[16]     Although the trial court is at liberty to set aside its own rule, it cannot do the same with the Indiana Trial Rules. When interpreting trial rules, we apply the rules of statutory construction. *Carter-McMahon v. McMahon*, 815 N.E.2d 170, 175 (Ind. Ct. App. 2004). "[O]ur objective when construing the meaning of a rule is to ascertain and give effect to the intent underlying the rule." *Id.* We construe the word "shall" as mandatory rather than directory. *See Shepherd v. Carlin*, 813 N.E.2d 1200, 1203 (Ind. Ct. App. 2004) (construing "shall" in statutes). As provided above, Trial Rule 3.1(H) allows an attorney to file a motion to withdraw representation "upon a showing that the attorney has sent

*written notice* of intent to withdraw to the party at least ten (10) days *before* filing a motion to withdraw representation," and that one of two conditions is satisfied. (Emphasis added.) An attorney filing a motion to withdraw from representation "*shall* certify the last known address and telephone number of the party . . . and *shall* attach to the motion a copy of the notice of intent to withdraw that was sent to the party." T.R. 3.1(H) (emphasis added).

[17]  Here, Vandivier made an oral motion to withdraw his appearance because he had been unable to make contact with Father. The trial court later found:

> Father's prior attorney withdrew for lack of communication and inability to get a response from the Father regarding preparation for this case. The attorney described multiple attempts at written and telephonic communication regarding the case. While not sworn testimony, these assertions to the court by an officer of the court are, for purposes of this motion, accepted as truth.

Appellant's App., Vol. II at 7, ¶ 3. At no point, however, did Vandivier state that he had attempted to make written communication with Father. To the extent the trial court found otherwise, therefore, the finding is clearly erroneous and we must "disregard any special finding that is not proper or competent to be considered." *In re B.J.*, 879 N.E.2d 7, 19 (Ind. Ct. App. 2008), *trans. denied*. The only evidence before the trial court was that Vandivier and his staff had attempted to contact Father by phone six times in the preceding twenty-two days. And there was no evidence that Vandivier had provided Father with notice of his intent to withdraw, let alone the requisite ten days' written notice. Indeed, even when Vandivier asked the trial court whether he should reduce his

motion to writing, the trial court stated, "No. You're here, Motion on the record, granted, you're free to go." Tr., Vol. 2 at 4.

[18] Acknowledging counsel's noncompliance with Trial Rule 3.1(H), the trial court reasoned that Father invited the error because of his failure to communicate with Vandivier and that "any prejudice the Father incurred as a result of [Vandivier's] failure to withdraw in a timely manner and with written notice to the Father is resoundingly outweighed by Father's own failure to communicate, return phone calls, and follow up on his case for months." Appellant's App., Vol. II at 8, ¶ 6. We disagree for two reasons.

[19] First, the doctrine of invited error provides that "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Witte v. Mundy*, 820 N.E.2d 128, 133-34 (Ind. 2005). The record reflects that Vandivier possessed Father's phone number, email address, and mailing address and that this contact information remained unchanged during the course of his representation. Aside from six phone calls, however, Vandivier took no further action to contact Father and there is no evidence that Father was aware of the final hearing or of Vandivier's intent to withdraw. It was not until seventeen days after the final hearing, and three days after Father had retained new counsel, that Vandivier filed, and Father received, written notice of Vandivier's withdrawal. Certainly, both Vandivier and the trial court are aware of the requirements of Trial Rule 3.1(H). And although we do not condone Father's recalcitrant behavior, and we agree with the trial court that Vandivier was

placed in the ethically dubious position of representing a client with whom he lacked contact, Father's behavior did not prevent Vandivier, or the trial court, from complying with Trial Rule 3.1(H). *See In re D.A.,* 869 N.E.2d at 509 (holding in a termination of parental rights case that the trial court abused its discretion by granting father's attorney's motion to withdraw despite the fact that father failed to meet with his attorney or appear at the pretrial conference where local rules required father's attorney to inform father of the intent to withdraw prior to filing that motion with the court). Therefore, without at least some notice of Vandivier's intent to withdraw or evidence that Father was aware of the final hearing, we cannot conclude Father invited such error.[1]

[20] Second, a "parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). In Father's absence and without the opportunity to be heard, Mother was granted sole legal and physical custody of their children. Thus, in the absence of evidence that Father was aware of the final hearing or was provided notice of Vandivier's intent to withdraw, we believe Father's rights were likely prejudiced by Vandivier's, and the trial

---

[1] This is not to say that Father's recalcitrant behavior had no effect on this case. Under the circumstances, it appears Vandivier's motion for a continuance two days prior to the final hearing was motivated by Vandivier's inability to make contact with Father. Denial of such a motion, as discussed above, was well within the trial court's discretion.

court's, noncompliance with Trial Rule 3.1(H). *See In re K.S.,* 917 N.E.2d 158, 162 (Ind. Ct. App. 2009); *In re D.A.,* 869 N.E.2d at 509.

[21] For these reasons, we conclude the trial court abused its discretion in denying Father's motion to correct error as related to the trial court's decision to allow counsel to withdraw his appearance before the final hearing. The undisputed evidence reveals that Vandivier did not provide Father with notice of his intent to withdraw nor did he provide the trial court with a copy of his timely, written notice to Father. *See F.M. v. N.B.,* 979 N.E.2d 1036, 1042 (Ind. Ct. App. 2012) (reversing trial court's denial of mother's motion to continue after her counsel withdrew his appearance at the commencement of a contested custody hearing in violation of Trial Rule 3.1(H) and local rules). Although Father certainly could have, and should have, been more actively involved in his own case, we do not believe his conduct rises to the level of invited error and we cannot say that the record shows that Mother would have been prejudiced by a reasonable postponement or delay of the final hearing. We therefore reverse the denial of Father's motion to correct error and remand for a new final hearing.[2] Considering Father has long since retained new counsel and appears to have alleviated any communication issues, we find it unnecessary for Vandivier to remain part of these proceedings, despite the error in granting his motion to withdraw, and he is dismissed accordingly.

---

[2] Considering our disposition of this case and remand for a new hearing, we also reverse the trial court's award of attorney's fees in favor of Mother. *See* Appellant's App., Vol. II at 9, ¶ 10.

# Conclusion

[22] For the reasons stated above, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

[23] Affirmed in part, reversed in part, and remanded.

Baker, J., and May, J., concur.