K.S., Appellant–Respondent,

v.

MARION COUNTY DEPARTMENT OF CHILD SERVICES and Child Advocates, Inc., Appellees–Petitioners.

No. 49A02–0905–JV–384.

Court of Appeals of Indiana.

Nov. 30, 2009.

Jill M. Acklin, Westfield, IN, Attorney for Appellant.

Donna Lewis, Indianapolis, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

K.S. ("Mother") appeals from the trial court's termination of her parental rights

over her minor daughter, A.S., following a hearing. Mother raises two issues for our review, but we address only the following dispositive issue: whether the trial court abused its discretion when it permitted Mother's trial counsel to withdraw her appearance under the Marion Circuit and Superior Court Civil Division rule on the withdrawal of appearances.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

Mother is the biological mother of A.S., born in 2001. On April 3, 2007, the Marion County Department of Child Services ("DCS") filed a petition alleging A.S. to be a child in need of services ("CHINS"). Among other things, the CHINS petition alleged that Mother had caused various physical injuries to A.S., including biting A.S., and that A.S.'s siblings[1] were likewise abused, including one having been forced to drink from a toilet as "punishment." Pet. Exh. 3 at 2.[2] On August 22, Mother and the DCS submitted an Agreed Entry, in which Mother stipulated that the DCS would be able to prove those allegations by a preponderance of the evidence. Mother also agreed to maintain contact with the family case manager ("FCM") every other week; notify the FCM of any changes in address, phone number, employment, or other significant changes; "actively participate in, and successfully complete [within six months], each of the services listed" and "be able to reasonably demonstrate the skills taught by said services"; maintain a legal and stable source of income and housing; and "maintain regular and timely visitation with [A.S.]." Pet. Exh. 8 at 3–4.[3] The services listed for Mother's participation included home-based counseling, individual/family counseling, parenting classes, and domestic violence treatment. Mother also agreed to have A.S. placed in the DCS's care. The trial court adopted the Agreed Entry as a dispositional order that same day.

On August 6, 2008, the DCS filed its petition for the involuntary termination of Mother's rights over A.S. On September 15, the court held an initial hearing, at which Mother appeared along with her recently-appointed counsel. The court gave Mother actual notice of a pretrial hearing to be held on October 31. Mother and her attorney appeared at that hearing, and Mother was given actual notice of a December 1 trial date. On December 1, Mother failed to appear, and her attorney informed the court that "Mother is in the process of working out adoption consents and has moved out of state." Appellant's App. at 8. The court continued the matter to December 19, then to January 23, 2009, and then to January 30. Mother did not appear at any of those hearings, and, by the end of January, the DCS had yet to receive the signed consents to adoption. The court set the matter for a fact-finding hearing on February 27, but, again, Mother failed to appear. Mother's attorney noted that she had "had recent contact" with Mother but moved for a continuance because she "need[ed] additional time to prepare for this case." *Id.* at 5. The DCS and guardian ad litem both objected, noting that they both had had contact with

---

1. A.S.'s siblings were not parties to the termination hearing or to this appeal. While the record is not clear, it appears that A.S.'s siblings were reunited with Mother sometime before November 2008.

2. We note that Mother has failed to include the CHINS petition in her appellant's appendix. *See* Ind. Appellate Rule 50(A)(2)(g).

3. The Agreed Entry is not included in Mother's appendix on appeal. *See* App. R. 50(A)(2)(g).

Mother and that Mother "confirmed she was aware of today's trial date." *Id.* The court overruled the DCS's and guardian ad litem's objections and continued the fact-finding hearing to March 16.

At the commencement of the March 16 hearing, Mother's counsel engaged the court in the following colloquy:

THE COURT: Okay, Victoria Bailey appears for the mother, [K.S.,] and mother fails to appear, is that correct?

MS. BAILEY: That's correct, Judge.

THE COURT: Okay, do we have any preliminary matters?

MS. BAILEY: I do.

THE COURT: And what would that be?

MS. BAILEY: Well, Judge, my client's not here. This case was previously scheduled to go to trial about two (2) weeks ago. . . .

THE COURT: February 27th?

MS. BAILEY: That sounds right, yes. And my client failed to appear at that time. I'm not able to have phone communication with her. Her phone doesn't have voice mail [and I] can't leave a message so if they don't answer the phone I can't leave a message. But I do have, I have had email communication with her. *I got an email from her shortly after the last hearing asking what had happened even though she failed to appear. At which time I informed her that I needed to know if she was planning on attending today. I needed to know what her intentions were in terms of being present and participating in a hearing. And then I never heard back from her. I also explained in that email that I would not be able to adequately represent her interests if she did not appear and/or at least communicate with me. And I heard nothing back from her.* Now I know that technically under the rules, an email doesn't count as a ten (1)[sic] day letter but *I do believe that I conveyed my intentions to her and that she was made aware of the fact that I would not be able to represent her adequately if she did not communicate with me or did not appear at the trial today.* So for those reasons I would ask leave of the Court to withdraw my[ ] appearance.

THE COURT: How long have you been on the case?

MS. BAILEY: I inherited this case . . . in August of 2008.

THE COURT: Are you on the CHINS case as well?

MS. BAILEY: Yes, I am.

THE COURT: Have you ever been able to meet with your client?

MS. BAILEY: Yes, I have. I had regular contact with her for a while. She and her fiance and their three (3) children moved out of state after [another child's] CHINS case closed. They moved, they ended up in Florida, I believe is where they are right now.

THE COURT: So, you're familiar with the case.

MS. BAILEY: I am familiar with the case. My concerns though[,] in terms of adequately representing [Mother], Judge, . . . are [that] she's more familiar with the people, the service providers and people that she's worked with in the case and is in a good position to assist, would've been in a good position to assist me in cross examining them if she were here. I'm just not sure how adequately I will be able to represent her interests without her presence and input at the time today.

MS. LEWIS [for the DCS]: If I may, your Honor. DCS would have no objection to Ms. Bailey withdrawing. We have had no contact with mother as well and I believe the rule states that counsel is allowed to withdraw upon the ten (10)

day letter or for good cause shown. And we believe that Ms. Bailey has made diligent efforts to contact mother. She has bent over backwards previous to this thing to work out an agreement and a post[-]adopt and had in fact worked everything out, had sent everything to her client, her client failed to respond for several months. This is an ongoing thing with [Mother] and we do understand her position.

\* \* \*

THE COURT: [O]bviously it's not your fault that your client does not contact you so I won't put you in the position of being unprepared for today's trial. I'll grant the motion to withdraw. . . .

MS. BAILEY: Thank you, Judge.

Transcript at 4–8 (emphases added).

On March 19, the trial court entered its findings of fact and conclusions thereon terminating Mother's parental rights. In particular, the trial court found the following facts:

5. [A.S.] went through three placements prior to her current placement. Previous placements did not work out because of [A.S.'s] behaviors, including sexually acting out and being a sexual perpetrator. As a result, she was placed in treatment and has been diagnosed with Post Traumatic Stress Disorder[ ] and an Attachment Disorder.

6. As a result of her special needs, [A.S.] is in need of special attention and a strict, predictable, and safe environment in order to overcome behavioral problems. In addition, she requires a tremendous amount of time to be monitored continuously when around other children to avoid . . . sexually acting out.

7. To address the need for parenting skills, and especially skills in parenting a child with [A.S.'s] special needs, [Mother] was to complete parenting classes, individual and family counseling, and complete home[-]based counseling. To avoid future abuse in the household, [Mother] was also to complete a domestic violence program.

8. [Mother] has failed to complete parenting classes, individual and family counseling, or home[-]based counseling.

9. Stephanie Williams, a visitation supervisor with home[-]based services Indiana Mentor, has observed [Mother] being unable to maintain structure or adequate monitoring during visitation sessions. She felt that [Mother] was overwhelmed having her three other children with her and could never recommend that [A.S.] be returned to her mother.

10. In late October 2008, [Mother] informed [DCS] that she was leaving Indiana and was willing to sign consent to the adoption of [A.S.] Although never signing consent, [Mother] has remained outside Indiana since November 3, 2008[,] and has not had contact with [A.S.] [Mother] has for all practical purposes abandoned [A.S.]

11. There is a reasonable probability that the conditions that resulted in the removal and continued placement of [A.S.] outside the home will not be remedied by [Mother]. [Mother] has not completed services even though it has been over eighteen months since services were agreed to. She left Indiana over four months prior to this trial, abandoning [A.S.] and all efforts to participate in services. Without parenting and counseling services, conditions will not be remedied.

12. Continuation of the parent-child relationship poses a threat to the well-being of [A.S.] Without [Mother] completing services to educate herself about [A.S.'s] problems and needs, [A.S.]

would be endangered in that [Mother] cannot provide the structured environment [A.S.] requires. As a result of [Mother's] inability or unwillingness to learn how to parent and monitor [A.S.] there is a great chance that she would remain a sexual perpetrator.

13. [A.S.] has been placed with Sharon Herring since September 2007. Ms. Herring has put forth a tremendous effort in working with [A.S.] and providing her therapy and care. As a result, [A.S.] has made significant progress. This placement is pre-adoptive.

14. Termination of the parent-child relationship is in [A.S.'s] best interests. Termination would provide the opportunity for [A.S.] to be adopted into a safe, loving environment where she will receive the care she requires. An adoption would also provide [A.S.] with a sense of permanency.

15. There is a satisfactory plan for the care and treatment of [A.S.], that being adoption.

Appellant's App. at 13–14. This appeal ensued.

## DISCUSSION AND DECISION

■ Mother raises two issues on appeal. First, Mother asserts that the trial court abused its discretion under local court rules when it permitted Mother's attorney to withdraw. Second, Mother contends that she received ineffective assistance of counsel when her trial counsel withdrew her appearance at the beginning of the March 16 termination hearing.[4] We find the first issue dispositive and, therefore, do not discuss whether Mother received ineffective assistance of counsel. We note that Mother does not directly challenge the substance of the trial court's findings in its termination decree, nor does Mother

argue that the trial court erred in terminating her parental rights over A.S.

■ The dispositive issue in this appeal is whether the trial court abused its discretion when it permitted Mother's trial counsel to withdraw her appearance at the commencement of the March 16 fact-finding hearing. The decision regarding whether an attorney's motion to withdraw should be granted is left to the trial court's discretion. *Andrews v. Monroe County Dep't of Child Servs. (In re D.A.)*, 869 N.E.2d 501, 507 (Ind.Ct.App.2007). An abuse of discretion exists only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Further, when we review for an abuse of discretion we do not reweigh the evidence. *See, e.g., Marks v. Tolliver*, 839 N.E.2d 703, 707 (Ind.Ct.App.2005).

In *In re D.A.*, we held that the trial court abused its discretion when, in the middle of a termination hearing, it granted the father's attorney's motion to withdraw. 869 N.E.2d at 509. Specifically, we held that the Monroe Circuit Court rules required the father's attorney to inform father of the intent to withdraw prior to filing that motion with the court, which father's attorney did not do. *Id.* We also noted that the father "was deprived of counsel without notice, and such deprivation of counsel violated Father's statutory right to counsel." *Id.* (citing Ind.Code § 31–32–2–5). While we recognized that "Father did not meet with his attorney and did not appear at the termination pretrial conference," nonetheless we concluded that the trial court's failure to follow its own rule constituted an abuse of its discretion. *Id.*

---

4. Under Indiana law, "[a] parent is entitled to representation by counsel in proceedings to terminate the parent-child relationship." Ind. Code § 31–32–2–5; *see also* I.C. § 31–32–4–1.

Here, the local rule regarding withdrawal of appearances states as follows:

All withdrawals of appearances shall be in writing and by leave of Court. Permission to withdraw shall be given only after the withdrawing attorney has given his client ten days *written notice of his intention to withdraw,* has filed a copy of such with the Court; and has provided the Court with the party's last known address; or upon a simultaneous entering of appearance by new counsel for said client. *The letter of withdrawal shall explain to the client that failure to secure new counsel may result in dismissal of the client's case or a default judgment may be entered against him,* whichever is appropriate, and other pertinent information such as trial setting date or any other hearing date. The Court will not grant a request for withdrawal of appearance unless the same has been filed with the Court at least ten days prior to trial date, except for good cause shown.

Marion Circuit and Superior Court Civil Rule LR49–TR3.1–201, http://www.in.gov/judiciary/marion/docs/lr051509.pdf at 42 (last visited Oct. 1, 2009) ("the local rule") (emphases added). Thus, to withdraw an appearance in accordance with the local rule, an attorney must give both her client and the court timely, written notice of that intent, and the attorney must provide the court with her client's last known address.[5] The attorney's written letter to her client must expressly inform the client of the following: (1) "that failure to secure new counsel may result in dismissal ... or a default judgment"; and (2) "other pertinent information such as trial setting date." *Id.* The last sentence of the local rule then provides that "[t]he Court will

not grant a request for withdrawal of appearance unless the same has been filed with the Court at least ten days prior to trial date, except for good cause shown." *Id.*

The parties disagree on the correct interpretation of the last sentence of the local rule. Mother contends that "nothing in the record suggests that the attorney demonstrated *'good cause' for her to withdrawal [sic] moments before trial.*" Appellant's Brief at 13 (emphasis added). That is, Mother assumes that the "except for good cause shown" language applies to the preceding, "unless the same has been filed with the Court at least ten days prior to trial" language. *See* Rule LR49–TR3.1–201. The DCS, however, argues that the local rule "provides for withdrawal of a counsel's representation upon ten days written notice to the client ... or upon *good cause shown.*" Appellee's Brief at 6 (emphasis original). That is, the DCS suggests that the last sentence of the local rule should be read as follows: "The Court will not grant a request for withdrawal of appearance ... except for good cause shown." *See id.*; Rule LR49–TR3.1–201. If the DCS is correct, we need only determine whether the trial court could have determined that Mother's attorney had good cause to withdraw her appearance. However, if Mother is correct, the good cause exception applies only to the requirement that the attorney's written letter of intent be filed with the court at least ten days prior to trial, and the other obligations the local rule imposed on Mother's attorney must still be considered.

We agree with Mother's interpretation of the local rule. The "except for good cause shown" language appears at the end of the last sentence, and it modifies all

---

**5.** It is not disputed in this appeal that Mother's trial counsel properly informed the court of Mother's last known address.

language preceding it within that sentence. Accordingly, we read the last sentence to mean that the trial court is not permitted to grant an attorney's request to withdraw her appearance if that attorney has not given her client written notice and filed a copy with the court at least ten days prior to the trial date. However, if the requesting attorney shows good cause for not timely filing her request with the court, then the court may consider counsel's request. Thus, the good cause exception applies only when counsel fails to timely file her written request with the court at least ten days prior to the trial date. The other requirements imposed on the requesting attorney—specifically, the local rule's demand that the attorney expressly inform her client of the intent to withdraw and of the risk the client is facing by the attorney's decision—must still be satisfied to comply with the local rule.

Assuming for argument that Mother's attorney had good cause not to file her request to withdraw at least ten days before the March 16 hearing date, the trial court nonetheless abused its discretion when it permitted Mother's attorney to withdraw her appearance. There is no evidence that Mother's attorney informed Mother either of her intent to withdraw or "that failure to secure new counsel may result in dismissal ... or a default judgment" against Mother. *See* Rule LR49–TR3.1–201. Rather, in her oral motion to withdraw at the commencement of the March 16 hearing, Mother's attorney stated only the following in support of her motion:

> I informed [Mother] that I needed to know if she was planning on attending today. I needed to know what her intentions were in terms of being present and participating in a hearing. And then I never heard back from her. I also explained in that email that I would not be able to adequately represent her

interests if she did not appear and/or at least communicate with me. And I heard nothing back from her. . . . I do believe that I conveyed my intentions to her and that she was made aware of the fact that I would not be able to represent her adequately if she did not communicate with me or did not appear at the trial today.

Transcript at 4–5. The attorney's statement to Mother, as reported to the court, focused on the difficulty the attorney would have in representing Mother if Mother failed to appear and participate in the hearing. Nothing in that statement demonstrates that Mother's attorney expressly informed Mother in writing either that she intended to withdraw her appearance or of the potential risks Mother would face if her attorney were to withdraw from the termination proceedings.

▮▮▮ Finally, we note the following:

> once a trial court promulgates a rule, the court and all litigants are generally bound by the rule. Nevertheless, a trial court may set aside its own rule—although it should not be set aside lightly—if the court assures itself that it is in the interests of justice to do so, that the substantive rights of the parties are not prejudiced, and that the rule is not a mandatory rule.

*In re D.A.*, 869 N.E.2d at 509 (citations omitted). Nothing in the record suggests that the trial court intended to set aside the local rule when it granted Mother's attorney's request. And it might well be the case, as suggested by the DCS, that Mother has been involved in these proceedings only as an obstructionist. *See* Appellee's Brief at 8 ("[M]other had blatantly demonstrated her lack of interest in the outcome of this case and placed counsel in a position where she could not adequately represent her client."). We cer-

tainly do not condone such behavior, and we recognize that the speedy resolution of termination and adoption proceedings are in the best interests of the child. *See Baker v. Marion County Office of Family & Children,* 810 N.E.2d 1035, 1040–41 (Ind.2004) (" 'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged.' ") (quoting *Lehman v. Lycoming County Children's Servs. Agency,* 458 U.S. 502, 513–14, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982)).

But there can be little doubt that Mother's rights were prejudiced by the noncompliance with the local rule. *See In re D.A.,* 869 N.E.2d at 509. Parental rights are of a constitutional dimension and, in Indiana, parents involved in termination proceedings have a statutory right to counsel. *See* Ind.Code § 31–32–2–5; *In re D.A.,* 869 N.E.2d at 509; *Weldishofer v. Dearborn County Div. of Family & Children (In re J.W.),* 779 N.E.2d 954, 959 (Ind.Ct.App. 2002), *trans. denied.* The local rule's requirement that a withdrawing attorney expressly inform her client in writing of her intent to withdraw protects that statutory interest. And the requirement that the withdrawing attorney inform her client of the risks inherent in that decision comports with the "informed consent" that often accompanies attorney action. *See* Ind. Professional Conduct Rule 1.0(e).

In sum, we hold that the trial court abused its discretion when it granted Mother's attorney's oral motion to withdraw her appearance at the commencement of the March 16 hearing in violation of the local rule. Here, as in *In re D.A.,* Mother's attorney did not notify Mother of her intention to withdraw. 869 N.E.2d at 509. The local rule also required Mother's attorney to expressly inform Mother of the potential consequences of the withdrawal, and the undisputed evidence demonstrates that Mother's attorney did not do so. Thus, we must reverse the trial court's decision, vacate the termination order, and remand for further proceedings. On remand, Mother's attorney may seek to withdraw her appearance, provided that her motion to withdraw complies with the local rule. If Mother's attorney complies with the local rule [6] and Mother again fails to appear in person or fails to take the steps necessary to obtain new counsel within a reasonable time, the trial court may reinstate the termination order vacated by this decision.

Reversed and remanded with instructions.

BARNES, J., concurs.

KIRSCH, J., dissents with separate opinion.

KIRSCH, Judge, dissenting.

I respectfully dissent.

Mother put counsel and the trial court in an untenable position. On February 27, 2009, the court set this matter for hearing on March 16, 2009. Counsel notified Mother of the hearing, stated that she needed to know whether Mother would attend, and advised Mother that she could not adequately represent her unless she attended or at least communicated with her. Mother did not respond. Because Mother failed to communicate or cooperate with her lawyer, counsel could not prepare for the final hearing or defend against the termination. Counsel did not know until the hearing itself occurred whether Mother would attend. Counsel could not give her due process rights or her statutory right to counsel.

---

**6.** Mother does not suggest that strict compliance with the local rule would either deny her

Mother ten days notice of her intent to withdraw because she had no such intent until the hearing itself occurred and Mother failed to appear. I believe that under these circumstances good cause was shown for not filing a letter of withdrawal ten days prior to the trial date and that the trial court was within its discretion in allowing the withdrawal.

Mother makes no showing, and, indeed, no claim of prejudice. She does not claim that she relied upon the notice provisions of the local rule regarding withdrawal or even knew of the rule. Although Mother claims that counsel was ineffective, Mother makes no showing of any objection counsel could or should have raised, of any question counsel could or should have asked, or of any evidence counsel could or should have presented. Had the trial court denied the request to withdraw and continued with the hearing, the attorney would have sat there as a potted plant, and the result would have been exactly the same as it is now—Mother's parental rights would have been terminated.

I would affirm the trial court in all respects.