

FILED

Sep 23 2015, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT FATHER

Robert J. Little
Brookston, Indiana

ATTORNEY FOR APPELLANT MOTHER

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of Termination of the Parent-Child Relationship of:

B.H. and S.H. (Minor Children),

and

B.H. (Father) and
M.B. (Mother),

*Appellants-Repondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

September 23, 2015

Court of Appeals Case No.
91A02-1504-JT-213

Appeal from the White Circuit Court

The Honorable Robert W. Thacker, Judge

Trial Court Cause Nos.
91C01-1410-JT-8
91C01-1410-JT-9

**Baker, Judge.**

[1] B.H. (Father) and M.B. (Mother) appeal the juvenile court's order terminating their relationship with their two children. Mother argues that the juvenile court should have granted her motions to continue the termination hearing, and both parents argue that there is insufficient evidence supporting the termination order. Finding no error and sufficient evidence, we affirm.

# Facts

[2] S.H. was born to Mother and Father on May 5, 2006; B.H. was born to Mother and Father on September 22, 2008.

[3] On April 30, 2013, law enforcement was called after Father stabbed his brother-in-law in the presence of the children. DCS received a report on May 2, 2013, detailing the incident and alleging that Father was an active methamphetamine user and had been arrested. During its assessment, DCS discovered that Mother and children were staying in a home that had previously been investigated for methamphetamine use. Mother, who was pregnant, refused to take a drug screen because she had recently smoked marijuana. As part of the assessment, DCS performed drug tests on both children. S.H. tested positive for methamphetamine. As a result, DCS removed both children from the parents' care and custody and placed them in relative care.

[4] On May 24, 2013, DCS filed a petition alleging that the children were children in need of services (CHINS). The parents admitted that Father was incarcerated, that Mother had recently used marijuana, and that S.H. had tested positive for methamphetamine while in the parents' care. On June 28, 2013,

the juvenile court found both children to be CHINS. At the July 19, 2013, dispositional hearing, the juvenile court ordered Mother to, among other things: maintain stable housing; refrain from drug use; submit to random drug screens; and attend all scheduled visitations with children. Because Father was incarcerated, the court did not order that he participate in any services.

[5] Between June and November 2013, Mother attended only fifteen out of twenty-eight scheduled visits with the children. Her visits became more regular in January 2014, but she reported getting frustrated with the children, and the visitation supervisor had to intervene repeatedly because Mother was unable to manage the children's behavior. In July 2014, the children moved to Florida to live with their maternal grandparents. Mother was allowed to have two weekly phone calls with the children, but during five and one-half months, Mother called only eight times and spoke to the children for approximately five minutes each time.

[6] After failing to attend two previous scheduled substance abuse intake assessments, in March 2014, Mother attended an intake assessment and was referred to an intensive outpatient program (IOP). She attended only four out of thirteen sessions and eventually quit attending altogether. Mother tested positive for methamphetamine in May 2013, and she tested positive for hydrocodone—for which she did not have a prescription—in July 2013, August 2013, and twice in January 2014. Mother also missed multiple drug screens. In August 2014, Mother gave birth to her third child, who tested positive for opiates and methamphetamine at birth.

[7] In June 2014, Mother was unsuccessfully discharged from homebased case management services. Throughout the CHINS case, Mother had unstable housing, living in at least six different locations. Mother was also incarcerated for theft between October and December 2013. At the time of the termination hearing, Mother was on probation, which she had already violated multiple times.

[8] In July 2014, Mother was living with her boyfriend. While the residence itself met minimal standards, Mother's boyfriend was a convicted felon for violent crimes, had substance abuse issues, and had previously been involved with DCS. As a result, DCS did not approve the children to relocate to that home. At the time of the termination hearing, Mother and her boyfriend were still in a relationship. As of February 2015, Mother was homeless again.

[9] In 2000, Father was convicted of armed robbery and received a twenty-year sentence, with four years executed and ten years suspended to probation. When he was arrested in May 2013, he was still on probation for the armed robbery conviction. On May 2, 2013, Father was arrested for dealing methamphetamine. As a result of the arrest, Father's probation was revoked and he was ordered to serve two years of the sentence for armed robbery. Eventually, Father was convicted of class B felony dealing in methamphetamine and class D felony criminal recklessness. He received an eleven-year sentence for these convictions. Father's earliest possible release date is November 1, 2019.

On October 27, 2014, DCS filed a petition to terminate the parent-child relationship between the parents and the children. The first day of the termination hearing took place on December 18, 2014. That morning, Mother filed a motion to continue, contending that she had to work and risked getting fired if she came to court. The juvenile court denied the motion, in part because the motion had been filed at the last minute and multiple witnesses had traveled from out-of-state to testify. The second day of the termination hearing took place on March 3, 2015, and Mother again filed a motion to continue the morning of the hearing; the juvenile court again denied the motion. On March 31, 2015, the juvenile court granted DCS's petition and terminated the parent-child relationship between Mother, Father, and the children. Mother and Father now appeal.

## Discussion and Decision

## I. Motions to Continue

Mother first argues that the trial court erroneously denied her motions to continue. We review a trial court's ruling on a motion to continue a trial date for an abuse of discretion, with a strong presumption that the trial court properly exercised its discretion. *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 449 (Ind. Ct. App. 2007). The party seeking a continuance must show that he or she is free from fault. *Danner v. Danner*, 573 N.E.2d 934, 937 (Ind. Ct. App. 1991).

[12] On the morning of December 18, 2014, the first scheduled day of the termination hearing, Mother filed a motion to continue, alleging that she was unable to attend because of work and transportation issues and that she had not received notice of the hearing. The record reveals, however, that on November 20, 2014, Mother's attorney was present when the juvenile court stated that the termination hearing would begin on December 18, 2014. Mother's App. p. 3-4. Therefore, Mother had notice of the hearing. Her own failure to make arrangements with work is not good cause for a last-minute continuance, especially when multiple witnesses had traveled from out of state to testify. We find no abuse of discretion in the denial of the December 18, 2014, motion to continue.

[13] On the morning of March 3, 2015, the second day of the termination hearing, Mother again filed a motion to continue.[1] This time, she alleged that she was unable to attend because the person who was to transport her to court had been injured. DCS objected, stating that if Mother had notified DCS as soon as there was a problem, DCS would have provided transportation to ensure her presence at court. The trial court denied the continuance. We find no abuse of discretion in this ruling. Additionally, we note that Mother was represented by counsel throughout all of the termination proceedings. Her attorney cross-examined witnesses and had the opportunity to introduce evidence on her

---

[1] The second day of the termination hearing was originally scheduled to take place on January 14, 2015. DCS moved for a continuance because the family case manager assigned to the case had a serious illness and was unable to testify. Mother did not object to the continuance, which the trial court granted.

behalf. Consequently, we find no reason to conclude that Mother was denied a fair hearing, and we decline to reverse on this basis.

## II. Termination Order

## A. Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)    that one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

> (D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## B. Termination Between Mother and Children

Mother argues that the juvenile court erred in concluding that there is a reasonable probability that the conditions resulting in the children's placement outside the home will not be remedied; that continuation of the parent-child relationship poses a threat to the children's well-being; and that termination is in the children's best interests.

First, with respect to the conditions resulting in the children's removal from Mother, we note that the children were removed as a result of Mother's admitted drug use and S.H.'s positive drug test for methamphetamine. Over the course of the CHINS case, Mother repeatedly failed to take a substance abuse intake assessment, and once she did so, she failed to complete the recommended IOP program. She also repeatedly tested positive for opiates for which she did not have a prescription and failed to show up for multiple random drug screens. During the CHINS proceedings, Mother gave birth to a third child, who tested positive for opiates and methamphetamine at birth. It is clear, therefore, that despite multiple opportunities to address her substance abuse issues, Mother has failed to do so. We find that the evidence in the record supports the juvenile court's conclusion that there is a reasonable

probability that the conditions that resulted in the children's removal from Mother's care and custody would not be remedied.

[18] Second, with respect to the juvenile court's conclusion that continuation of the parent-child relationship poses a threat to the children's well-being, we again emphasize the above-described evidence of Mother's ongoing substance abuse issues that have never been remedied. Furthermore, the record reveals that Mother has been wholly unable to maintain stable housing. She directs our attention to the residence in which she was living on the first day of the termination hearing. While that residence met minimal standards, her live-in boyfriend—a convicted violent felon with substance abuse issues and prior DCS history—did not. Furthermore, as of February 2015, Mother was homeless again. We find that this evidence readily supports the trial court's conclusion that a continuation of the parent-child relationship poses a threat to the children's well-being.

[19] Finally, with respect to the best interests of the children, we highlight all of the above-described evidence. Additionally, we note that the record reveals that Mother did not maintain consistent contact with the children, either in person when they lived in Indiana, or by telephone after they moved to Florida. The children are in a loving, stable placement with their maternal grandparents, who plan to adopt them. Given Mother's wholesale inability or refusal to address her issues and improve her parenting skills, we find that the juvenile court did not err by finding that termination of the parent-child relationship is in the best interests of the children.

# C. Termination Between Father and Children

[20] Father argues that we should reverse the termination order with respect to him because the sole reason supporting termination is the fact of his incarceration. Indeed, our Supreme Court has emphasized that "incarceration is an insufficient basis for terminating parental rights." *K.E. v. Ind. Dep't of Child Servs.*, No. 82S04-1508-JT-491, at *1 (Ind. Aug. 20, 2015).

[21] We find both *K.E.* and an earlier case, *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009), to be instructive. Turning first to *G.Y.*, the mother in that case was incarcerated for an offense she had committed before her child was born. The *G.Y.* Court emphasized that "all of Mother's criminal history consists of offenses that were committed before G.Y.'s conception in 2003. After that time and for the first 20 months of his life, the record gives no indication that Mother was anything but a fit parent." *Id.* at 1262. While incarcerated, Mother completed an eight-week drug rehabilitation program and a fifteen-week parenting class, and was actively participating in a job program, actively working towards an associate's degree, and had regular and consistent visitation with the child. Finally, Mother's release from prison was "imminent." *Id.* at 1265. Given all of these factors, among others, our Supreme Court reversed the termination.

[22] In *K.E.*, while Mother was pregnant with the child, Father was charged with multiple drug-related criminal offenses. 82S04-1508-JT-491, at *1. Father was already incarcerated at the time of the child's birth, and his earliest possible release date was over two years from the date of the termination hearing. Our

Supreme Court noted that Father had housing and employment plans upon his release from incarceration; that Father had completed twelve programs while incarcerated and had attended Alcoholics Anonymous and Narcotics Anonymous; and that he visited with the child every week and spoke on the phone with the child every night. Thus, even though his release date was two years away, he had made "substantial efforts . . . to improve his life by learning to become a better parent, establishing a relationship with K.E. . . . , and attending substance abuse classes[.]" *Id.* at *7. In the end, our Supreme Court reversed the termination order.

[23] We find the instant case to be distinguishable from both *G.Y.* and *K.E.* In both of those cases, the incarcerated parent had committed the criminal acts prior to the births of their children. Here, in contrast, Father's children were five and seven years old when he stabbed their uncle in their presence. He was also dealing in methamphetamine and using methamphetamine, contributing to an environment that led to his seven-year-old testing positive for methamphetamine. Furthermore, Father's release date was nearly five years away from the date of the termination hearing.[2] Father did not testify regarding housing or employment plans following his release and he did not testify that he had completed any substance abuse programs while incarcerated despite admitting that he had abused methamphetamine during the children's lifetimes.

---

[2] Father testified that he was participating in a program that would potentially cut two years off of his sentence. But he had not completed the program at the time of the hearing, and currently his release date is still November 1, 2019.

Therefore, the fact of Father's incarceration was not the sole evidence supporting termination.

[24] The *K.E.* Court noted that there is no bright line rule regarding when release must occur to maintain parental rights, instead stating that courts must consider whether other evidence, coupled with the expected release date, supports a termination order. *Id.* at *6. In this case, the expected release date is far in the future—five years from the date of the termination hearing. When coupled with the circumstances of the criminal activity, which directly affected Father's children, and the absence of evidence regarding future plans and participation in substance abuse treatment, we find that the evidence demonstrates that the juvenile court did not err by concluding that termination is in the best interests of the children.[3]

[25] The judgment of the juvenile court is affirmed.

Bailey, J., and Mathias, J., concur.

---

[3] Father does not address the specific statutory elements required to be proved to support a termination; instead, he makes a general argument regarding the best interests of the children. To the extent that Father argues that reversal is warranted because DCS did not provide him with services during his incarceration, we note that it is well established that DCS is not required to provide services before commending termination proceedings. *E.g.*, *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009).