## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 15 2017, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joann M. Price
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of J.L., A Child in Need of Services, <br><br> L.H., Mother, <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | August 15, 2017 <br><br> Court of Appeals Case No. 45A04-1702-JC-313 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Thomas P. Stefaniak, Jr., Judge The Honorable Matthew B. Gruett, Magistrate <br><br> Trial Court Cause No. 45D06-1607-JC-842 |

**Kirsch, Judge.**

[1]   L.H. ("Mother") appeals from the juvenile court's order adjudicating J.L. ("Child") to be a child in need of services ("CHINS"). Mother raises two issues for our review, which we restate and consolidate as follows:

> I.  Whether the juvenile court abused its discretion when it denied Mother's motion to continue the fact-finding hearing; and
>
> II.  Whether there was sufficient evidence presented to support the CHINS adjudication.

[2]   We affirm.

## Facts and Procedural History

[3]   Mother is the biological mother of Child, who was born on January 15, 1999.[1] Mother had prior substantiated history with the Indiana Department of Child Services ("DCS") from 2006 when she left Child, who was seven years old at the time, with a relative without first notifying the relative. Mother did not come back for Child for a few days. In 2012, DCS again became involved with Mother, when she no longer wanted Child, who was then 13 years old, in her care, due to Child's behavior. Although Mother did agree to have Child come back in her care, "within that month [Child] was placed in foster care through the probation department." *Tr. Vol. II* at 18-19. Child went into foster care in 2012 and has remained out of Mother's care since 2012. During the time since

---

[1] K.L. is the father of Child, but does not participate in this appeal.

2012, Child has "been in and out of foster care, . . . Department of Corrections [("DOC")], placements, and things like." *Id*. at 17.

[4] When Child was released from DOC in February 2016, she began living with Mother's father ("Grandfather") because Mother was not able to care for her because Mother was experiencing pregnancy complications. Grandfather never had formal guardianship or any form of legal custody of Child. While in DOC, Child had been taking medications and attending counseling. However, when DCS became involved with Child later in 2016, Grandfather told DCS that he had not obtained the medications for her, and she was not in counseling. *Id*. at 14.

[5] In June 2016, DCS began an investigation into Child and Grandfather because there were allegations that they were not getting along. They were offered services, but at an assessment one month later, they were not participating in the services. On July 27, 2016, DCS received a referral that Grandfather no longer wanted Child in his home because Child was disrespectful to him, and he was no longer able to take care of her. DCS went to Grandfather's home and spoke with Child and Grandfather. Child stated that Grandfather had been drinking alcohol all day, that he was intoxicated, and that they had been arguing. *Id*. at 13. As part of the assessment, DCS spoke to Mother, and she "stated [Child] could not come stay with her." *Id*. at 16. DCS removed Child from Grandfather's care because Grandfather and Mother were unwilling to care for Child. Child was placed in foster care.

[6] On July 28, 2016, DCS filed a petition alleging Child to be a CHINS. The petition alleged that, "DCS took custody of the child, [Child], due to child's grandfather being unwilling to maintain her in his home, mother's unwillingness to assume custody of the child, [Child]'s mental health concerns for which she has not been receiving treatment, and her behaviors requiring further intervention." *Appellee's App. Vol. II* at 4. At the initial hearing held the same day, Mother did not request counsel and admitted in part and denied in part the allegations in the CHINS petition, particularly only denying allegation 3, which was the allegation about Grandfather drinking every day and acting aggressively. *Id*. at 3, 10-11. The juvenile court took Mother's CHINS admission under advisement "due to [M]other being a licensed nurse and this matter is due to the behavior of the child." *Id*. at 11-12. The juvenile court later allowed Mother to withdraw her admission at the fact-finding hearing.

[7] Although Mother did not request an attorney initially, the juvenile court later appointed counsel to represent Mother at the pretrial hearing. Mother and her appointed counsel appeared at the next pretrial hearing on October 19, 2016, at which time the fact-finding hearing was set for January 11, 2017. Mother's original appointed counsel discontinued her employment with the county on December 31, 2016 and withdrew as Mother's counsel. Renee Ortega ("Ortega") was subsequently appointed to represent Mother on January 5, 2017. On January 10, 2017, Ortega filed a motion to continue the fact-finding hearing, asserting that Mother did not feel prepared to go forward with the

hearing "with a new attorney on such short notice." *Id*. at 18. The juvenile court denied the motion the same day.

[8]     At the fact-finding hearing, Mother again requested a continuance and alleged that she had not had contact with her original counsel since the October 19 hearing. Mother also admitted that her original attorney's office had tried to schedule a phone interview with Mother, but that Mother was unable to keep the telephone appointment due to work obligations. She stated that thereafter she "never got – got a chance to contact anybody." *Tr. Vol. II* at 7. The juvenile court inquired of Mother as to why she had not let the court know she was having problems contacting her counsel. Mother responded that she did not know what to do because she had no one advising her. *Id*. at 8-9. The juvenile court then explained that, since Child was turning eighteen years old on January 15, which was only four days later, "this is the only opportunity that [DCS] has to present evidence in relation to their petition, so there is no ability to continue the hearing." *Id*. at 8. Ortega reiterated the request for a continuance, but stated that she understood the need to move forward and that she would proceed as best she could. *Id*. at 10. The juvenile court denied the request and found that a continuance would prejudice DCS because it would lose its ability to prosecute the case when Child turned eighteen. *Id*. at 11. The juvenile court then proceeded with the fact-finding hearing.

[9]     At the fact-finding hearing, DCS family case manager Rachel Fesko ("FCM Fesko") testified that she believed that Child was a CHINS because Child had been diagnosed with several mental health issues and was not receiving any

kind of treatment and had no one that was "willing to care for her." *Id*. at 19-20. There was testimony given from family case manager Haley McLean ("FCM McLean") that Mother "was authorized to do a parenting assessment," which she never completed and therapeutic visitation, which she never participated in. *Id*. at 28. During the CHINS proceedings, Mother had asked the juvenile court not to authorize services for her because "this had nothing to do with her so she did not want to participate in . . . any services." *Id*. at 28-29. Testimony was given that, prior to DCS involvement, neither Mother nor Grandfather were providing Child with what she needed, but that since DCS's involvement, Child was participating in services, working with a therapist, and learning independent living skills.

[10] Mother testified at the hearing that she had not taken Child into her home when she was released from DOC because Mother was pregnant and experiencing complications and could not handle a "violent kid." *Id*. at 43. At the hearing, Mother stated that it was not in the best interest of Child to be placed with her because of Child's violent behavior. *Id*. at 44. Mother testified that she did not know who would take care of Child and that she did not know what would happen when Child turned eighteen a few days later. *Id*. at 45-46.

[11] Child also testified, and when asked if she was willing to move back with Mother after her DOC release, Child stated, "I can't make nobody want me." *Id*. at 48. Child said she was participating in services, counseling, and independent living services. Child had obtained a job and was building career goals and working on her education with the goal of going to college.

[12] At the conclusion of the fact-finding hearing, the juvenile court granted DCS's petition and found that the permanency plan called for independent living and not reunification services. Mother now appeals.

## Discussion and Decision

## I. Motion to Continue

[13] The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court. *F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012). We will reverse the trial court only for an abuse of that discretion. *Id*. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *Id*. "An abuse of discretion may be found on the denial of a motion for a continuance when the moving party has shown good cause for granting the motion." *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied; see* Ind. Trial Rule 53.5. No abuse of discretion will be found when the moving party has not shown that he was prejudiced by the denial. *F.M.*, 979 N.E.2d at 1039. The party seeking a continuance must show that he or she is free from fault. *In re B.H.*, 44 N.E.3d 745, 748 (Ind. Ct. App. 2015), *trans. denied*.

[14] Mother argues that the juvenile court abused its discretion when it denied her motion to continue the fact-finding hearing. She contends that her motion should have been granted because she had not had contact with her original counsel since the hearing in October 2016, and Ortega was only appointed to be

her counsel a few days before the fact-finding hearing. Because of this, Mother asserts that she was not afforded adequate time to prepare for the hearing and gather pertinent evidence. Mother claims she was prejudiced by the denial of her motion for continuance because findings of abuse or neglect against a parent can have direct consequences on the parent's ability to maintain or secure employment and housing.

[15] On January 10, 2017, Ortega, who had been newly appointed to represent Mother, filed a motion to continue the fact-finding hearing, asserting that Mother did not feel prepared to go forward with the hearing "with a new attorney on such short notice." *Appellee's App. Vol. II* at 18. The motion also alleged that Mother felt her right to a fair trial would be impacted if she was required to proceed with the January 11 fact-finding hearing, and she requested more time to obtain required documents and to discuss the matter with her attorney. *Id*. The motion was denied the same day by the juvenile court. At the fact-finding hearing, Mother orally requested a continuance and alleged that she had not had contact with her original counsel since the October 19 hearing. She admitted that her original attorney's office had tried to schedule a phone interview with her, but that Mother was unable to keep the telephone appointment due to work obligations. She stated that, thereafter, she "never got – got a chance to contact anybody." *Tr. Vol. II* at 7. The juvenile court asked Mother why she had not let the court know she was having problems contacting her counsel, and Mother responded that she did not know what to do because no one was advising her. *Id*. at 8-9. The juvenile court then explained that,

because Child was turning eighteen years old four days later, on January 15, "this is the only opportunity that [DCS] has to present evidence in relation to their petition," and there was no ability to continue the hearing. *Id*. at 8. Ortega reiterated the request for a continuance, but stated she understood the need to move forward and that she would proceed as best she could. *Id*. at 10. The juvenile court denied the request and found that a continuance would prejudice DCS because it would lose its ability to prosecute the case when Child turned eighteen. *Id*. at 11.

[16] Mother argues that she requested the continuance because she needed more time to confer with her new attorney and to obtain evidence. However, she did not state how she was prejudiced by the denial of her motion to continue the fact-finding hearing. She has not stated what evidence she wanted to uncover or how the outcome of the fact-finding hearing would have been different if her motion had been granted. The evidence presented at the hearing showed that Mother had not taken Child into her home when Child was released from DOC because Mother was pregnant and experiencing complications; at the hearing, Mother testified she did not want Child to live with her. *Id*. at 43, 45. Mother admitted that Child needed services, but stated that she was not willing to take care of Child and did not know who would do so. *Id*. at 45. Mother's position since the beginning of the CHINS proceedings was consistent with her trial testimony, and she had not shown how a continuance would have altered the outcome of this case. No abuse of discretion will be found when the moving

party has not shown that she was prejudiced by the denial. *F.M.*, 979 N.E.2d at 1039.

[17] Additionally, the juvenile court's reasoning for denying Mother's continuance was that Child was turning eighteen in four days, and at that time, DCS would lose jurisdiction over Child and then would not be able to help Child under Indiana law. The evidence presented was that Child was in need of certain services, and Mother admitted as much in her testimony. *Tr. Vol. II* at 45. Under the circumstances of the present case, we conclude that the denial of Mother's motion to continue the fact-finding hearing was not clearly against the logic and effect of the facts or the reasonable and probable deductions which may be drawn therefrom. *F.M.*, 979 N.E.2d at 1039. The juvenile court did not abuse its discretion when it denied Mother's motion to continue.

## II.   Sufficient Evidence

[18] CHINS proceedings are civil actions, and therefore, it must be proven by a preponderance of the evidence that a child is a CHINS as defined by statute. *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015) (citing *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)), *trans. denied*. When we review a CHINS determination, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the juvenile court's decision and the reasonable inferences drawn therefrom. *Id.* at 39-40. We will reverse only upon a showing that the decision of the juvenile court was clearly erroneous. *Id.* at 40.

[19]     Mother argues that insufficient evidence was presented to establish that Child was a CHINS. She contends that the evidence presented at the fact-finding hearing did not show that she had abandoned Child as required under the statute. Mother asserts that the evidence showed that she was consistently involved with Child's plan of care since 2012, that she was physically not able to care for Child at the time Child was removed from Grandfather's care, and that she was not ordered to participate in any services. Mother, therefore, claims that there was no evidence to support the juvenile court's finding that Child had been abused or neglected by Mother or Grandfather and that Child was a CHINS under Indiana Code section 31-34-1-1.

[20]     DCS had the burden of proving by a preponderance of the evidence that Child was a CHINS. Ind. Code § 31-34-12-3. Indiana Code sections 31-34-1-1 through 11 specify the elements of the CHINS definition that the State must prove:

>      (1) the child is under the age of 18;
>
>      (2) one or more particular set or sets of circumstances set forth in the statute exists; and
>
>      (3) the care, treatment, or rehabilitation needed to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court.

*In re N.E.*, 919 N.E.2d at 105. Here, the juvenile court adjudicated Child to be a CHINS pursuant to Indiana Code section 31-34-1-1, which provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Therefore, this statute requires "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and . . . that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[21] The evidence presented at the fact-finding hearing showed that Mother was unable or unwilling and refused to care for Child. Testimony was given that, at the time Child was removed from Grandfather's care in July 2016, Mother told DCS that "[Child] could not come stay with her." *Tr. Vol. II* at 16. Evidence was presented that Child had not been in Mother's care since 2012. At the fact-finding hearing, Mother testified that she was not willing to care for Child and stated she did not know what would happen to Child or who would take care of Child when she turned eighteen. *Id*. at 45-46. FCM Fesko testified that Child

had been diagnosed with several mental health issues and, prior to DCS involvement, Child was not receiving any kind of treatment, neither Mother nor Grandfather were providing Child with what she needed, and Child had no one that was "willing to care for her." *Id.* at 19-20. Evidence was also presented that, since DCS's involvement, Child was participating in services, working with a therapist, and learning independent living skills.

[22] Contrary to Mother's contention that she was not ordered to participate in any services, the juvenile court had ordered her to complete a parenting assessment and to participate in therapeutic supervised visitation with Child. *Appellee's App. Vol. II* at 11. At the fact-finding hearing, evidence was presented that Mother failed to do either of these. *Tr. Vol. II* at 26-27, 28, 31-32. We, therefore, conclude that sufficient evidence was presented at the fact-finding hearing to establish that Mother was unable or refused to supply Child with necessary food, clothing, shelter, medical care, education, or supervision, and Child's physical or mental condition was seriously impaired or seriously endangered as a result and that Child needed care, treatment, or rehabilitation that she was not receiving and was unlikely to be provided without the coercive intervention of the court. *See* Ind. Code 31-34-1-1. Sufficient evidence supported the juvenile court's determination that Child was a CHINS.

[23] Mother contends that the present case is analogous to *In re V.H.*, 967 N.E.2d 1066 (Ind. Ct. App. 2012), in which a panel of this court reversed a CHINS determination because "it was apparent that Mother . . . was addressing V.H.'s behavioral issues" and the court could not agree that V.H. needed care,

treatment, or rehabilitation that she was not receiving and was unlikely to be provided without the coercive intervention of the court. *Id*. at 1073. In *V.H.*, although the mother had refused to pick V.H. up after her arrest because she wanted V.H. to be involved in counseling before coming back home, the mother sought out services for V.H. both before and after DCS became involved. *Id*. at 1073-72. The present case is clearly distinguishable from *V.H.* Here, the evidence showed that Mother did not take any affirmative steps to provide Child with services either before or after DCS became involved. The present case is also distinguishable because the mother in *V.H.* was willing to take her child back into her home if the child received counseling. Here, Mother did not want Child in her home at all and testified that she was not willing to care for Child and that she did not know what would happen to Child or who would take care of Child when she turned eighteen. Mother's attempt to liken the present case to *V.H.* is without merit. The juvenile court properly determined Child to be a CHINS.

Affirmed.

Najam, J., and Brown, J., concur.